EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| R&B Power, Inc. <br><br> Peticionaria <br><br> v. <br><br> Junta de Subastas de la Administración de Servicios Generales de Puerto Rico <br><br> Recurrida | Certiorari <br><br> 2024 TSPR 24 <br><br> 213 DPR ___ |

Número del Caso: CC-2023-0200

Fecha: 13 de marzo de 2024

Tribunal de Apelaciones:

    Panel IX

Abogados de la parte peticionaria:

    Lcda. Yesenia Medina Torres
    Lcdo. Tomás E. Correa Acevedo

Abogados de la parte recurrida:

    Lcdo. José L. Marrero Hernández
    Lcdo. Raúl Madera Toro

Materia: Derecho administrativo – La adopción de una regla legislativa por parte de una agencia administrativa debe cumplir con el procedimiento de reglamentación dispuesto en la Ley de Procedimiento Administrativo Uniforme; jurisdicción de la Junta Revisora sobre las revisiones administrativas que se presentan ante sí.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

R&B Power, Inc.

    Peticionaria

        v.                 CC-2023-0200    *Certiorari*

Junta de Subastas de la Administración de Servicios Generales de Puerto Rico

    Recurrida

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 13 de marzo de 2024.

¿Puede una agencia administrativa aplicar una disposición —contenida en una carta circular— que es, a todas luces, una regla legislativa, pero que, para su adopción, no atravesó el procedimiento de reglamentación dispuesto en la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), *infra*? La respuesta forzosa es que no.

Por otro lado, debemos resolver también si la Junta Revisora de Subastas de la Administración de Servicios Generales del Gobierno de Puerto Rico (Junta Revisora) actúa con jurisdicción sobre una revisión administrativa que se insta ante sí, aun cuando la resuelve fuera del término original con el que contaba

para ello. Resolvemos en la afirmativa, siempre y cuando emita su determinación antes de que transcurra el término para acudir en revisión al Tribunal de Apelaciones y de que se presente un recurso ante ese foro.

Este caso nos brinda la oportunidad de reiterar la doctrina firmemente establecida en nuestro Derecho Administrativo de que, siempre que una agencia administrativa pretenda adoptar una norma que constituya una regla legislativa, debe cumplir estrictamente con el procedimiento de reglamentación dispuesto en la LPAU. A su vez, extendemos la doctrina de Flores Concepción v. Taíno Motors, *infra*, a los procesos de la Junta Revisora sobre las revisiones administrativas que se presentan ante sí.

Veamos el trasfondo fáctico de la controversia que nos ocupa.

**I**

El 19 de julio de 2022 la Junta de Subastas de la Administración de Servicios Generales del Gobierno de Puerto Rico (Junta de Subastas) publicó una invitación y emitió el pliego para participar de la Subasta Formal 23J-00121,[1] para la adquisición de excavadoras compactas para el Departamento de Transportación y Obras Públicas (DTOP) y otras entidades gubernamentales.[2] El *Pliego de Subasta Formal Núm. 23J-00121* (*Pliego de Subasta*) contenía las instrucciones, formularios,

---

[1] Apéndice de la *Petición de certiorari*, págs. 26-27.
[2] Previamente se había celebrado la Subasta Núm. 22J-01768-R1, para la adquisición de estos mismos equipos, pero dicha adjudicación fue revocada por la Junta Revisora y se determinó devolver el caso a la Junta de Subastas para la celebración de una subasta nueva.

requisitos, especificaciones, términos y condiciones con los cuales tenían que cumplir los licitadores al presentar sus propuestas.[3] La reunión pre-subasta se celebró el 1 de agosto de 2022, donde se discutieron las especificaciones de los equipos, según detallados en la Especificación Núm. UEA-22-205,[4] del *Pliego de Subasta*.

Aunque la Junta de Subastas estableció la fecha de 2 de agosto de 2022 como fecha límite para que los licitadores sometieran preguntas, el 5 de agosto de 2022 notificó la Enmienda Núm. 1, la cual contenía una Especificación nueva, la Núm. UEA-23-018.[5] Mediante esta, la Junta de Subastas modificó las especificaciones del equipo solicitado a los efectos de aumentar los caballos de fuerza de las excavadoras compactas de treinta nueve caballos de fuerza (39hp) a cuarenta y ocho caballos de fuerza (48hp).[6]

Así las cosas, el 15 de agosto de 2022 se celebró el acto de apertura de la subasta y solo se recibieron ofertas por parte de R&B Power, Inc. (R&B Power) y González Trading. Luego, el 31 de agosto de 2022 la Junta de Subastas notificó una *Resolución de rechazo global*, en la que determinó que R&B Power y González Trading incumplieron con la Especificación Núm. UEA-23-018.[7] La Junta de Subastas indicó que R&B Power no cumplió con los requisitos de caballos de

---

[3] Apéndice de la *Petición de certiorari*, págs. 28-62.
[4] En esta especificación, se consignó que la excavadora compacta debía tener un motor no menor de treinta y nueve caballos de fuerza (39hp). Apéndice de la *Petición de certiorari*, pág. 59.
[5] Íd., págs. 100-101.
[6] Íd.
[7] Íd., págs. 266-271.

fuerza, ya que el equipo ofrecido contaba con cuarenta y siete punto seis (47.6hp) y el mínimo solicitado era de cuarenta y ocho (48hp). En cuanto a González Trading, la Junta de Subastas precisó que no satisfizo el requisito de garantía que se especificó. De este modo, determinó no adjudicar la subasta. Además, y en lo pertinente, la Sección IV de la *Resolución de rechazo global*, sobre Disponibilidad y Plazo para Solicitar Revisión, consignó lo siguiente:

> De conformidad con la Ley [Núm.] 73-2019, según enmendada, conocida como [la] *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, así como con lo dispuesto en la Ley [Núm.] 38-2017, según enmendada, conocida como [la] *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, una parte adversamente afectada por esta adjudicación podrá[,] dentro del término de veinte (20) días calendario, contados a partir del depósito en el correo federal o envío por correo electrónico de la notificación de esta adjudicación[,] presentar una solicitud de revisión ante la Junta Revisora de la Administración de Servicios Generales. **La parte afectada deberá cubrir los costos dispuestos en la Carta Circular ASG Núm. 2021-06.** (Negrilla suplida).[8]

En desacuerdo, el **20 de septiembre de 2022** R&B Power presentó una *Solicitud de revisión de la Subasta Formal Núm. 23J-00121* ante la Junta Revisora.[9] Alegó que la Junta de Subastas actuó de forma irrazonable y arbitraria al enmendar las especificaciones del equipo solicitado con posterioridad a la reunión pre-subasta y luego de transcurrida la fecha límite para que los licitadores sometieran preguntas.

---

[8] Íd., pág. 269.
[9] Íd., págs. 1-14.

Sostuvo que la Junta de Subastas no justificó la enmienda ni acreditó que el DTOP solicitara el cambio en las especificaciones. Añadió que la diferencia mínima de la oferta en términos de caballos de fuerza debía considerarse como una "desviación permisible" de conformidad con la Sección 7.3.17, inciso 11, del Reglamento de Subastas y que, además, el DTOP expresó que la propuesta de R&B Power cumplía con las especificaciones solicitadas, era la más económica y con mayor garantía.

El término de treinta (30) días para que la Junta Revisora considerara la *Solicitud de revisión de la Subasta Formal Núm. 23J-00121* o que notificara una extensión del plazo a tales fines venció el **20 de octubre de 2022**, sin que emitiera determinación alguna.[10] Sin embargo, el 24 de octubre de 2022, ya vencido dicho término, la Junta Revisora notificó una *Resolución* en la que extendió el término para resolver.[11]

Así pues, el 8 de noviembre de 2022 la Junta Revisora notificó una *Resolución* en la que desestimó la *Solicitud de revisión de la Subasta Formal Núm. 23J-00121*.[12] Determinó que R&B Power no perfeccionó su solicitud, pues no pagó el arancel correspondiente a la presentación de una solicitud

---

[10] Conforme con el Artículo 66 de la Ley Núm. 73-2019, *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, 3 LPRA sec. 9831 *et seq.*, "[l]a Junta Revisora deberá considerar la revisión administrativa, dentro de los treinta (30) días de haberse presentado. La Junta Revisora podrá extender dicho término una sola vez, por un término adicional de quince (15) días calendario".
[11] Apéndice de la *Petición de certiorari*, págs. 284-285. En particular, extendió el término a quince (15) días adicionales.
[12] Apéndice de la *Petición de certiorari*, págs. 286-290.

de revisión, según establece la Carta Circular ASG Núm. 2021-06 (Carta Circular).[13]

Inconforme, el 9 de noviembre de 2022 R&B Power instó un *Recurso de revisión de rechazo global de subasta* ante el Tribunal de Apelaciones.[14] En este, además de repetir esencialmente los argumentos que esbozó en el escrito de revisión ante la Junta Revisora, arguyó que la Carta Circular, en la que se dispuso la tarifa para la presentación de impugnaciones ante la Junta Revisora, era nula por incumplir con los requisitos establecidos en la Ley Núm. 38-2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), 3 LPRA sec. 9601 *et seq.*, para la adopción de reglamentos legislativos. Sostuvo que la mencionada Carta Circular contenía reglas que creaban y afectaban derechos, imponían obligaciones y establecían un patrón de conducta que tenía fuerza de ley y era de aplicación general a todos los que solicitaran servicios a la Administración de Servicios Generales del Gobierno de Puerto Rico (ASG).

Por su parte, la ASG presentó una *Moción de desestimación y escrito en cumplimiento de orden*.[15] Expuso que el recurso de revisión de R&B Power se debía desestimar por falta de jurisdicción por no haberse perfeccionado la

---

[13] Véase: *Carta Circular ASG Núm. 2021-06*, Apéndice de la *Petición de certiorari*, págs. 291-295.
[14] Apéndice de la *Petición de certiorari*, págs. 296-316.
[15] Íd., págs. 321-333.

solicitud de revisión ante la Junta Revisora, al no sufragarse los aranceles dispuestos en la Carta Circular.

En respuesta, R&B Power instó una *Oposición a moción de desestimación*.[16] Sostuvo que la Carta Circular estaba dirigida a las agencias a las que la ASG prestaba servicios; que la ASG incumplió con el procedimiento de reglamentación que establece la LPAU, y que la alegada falta de jurisdicción se notificó después de transcurrido el término que tenía la Junta Revisora para adjudicar la solicitud de revisión.

Ulteriormente, el 8 de febrero de 2023 el Tribunal de Apelaciones emitió una *Sentencia* mediante la cual desestimó el recurso de R&B Power.[17] Concluyó que procedía la desestimación debido a que la solicitud de revisión que se instó ante la Junta Revisora no se perfeccionó ante el impago de los aranceles. Señaló que R&B Power no podía asumir que la advertencia contenida en la *Resolución de rechazo global* sobre los costos establecidos en la Carta Circular no le era de aplicación. Oportunamente, el 23 de febrero de 2023 R&B Power solicitó reconsideración, pero esta se declaró *no ha lugar* mediante una *Resolución* que se notificó el 28 de febrero de 2023.

Aún en desacuerdo, el 30 de marzo de 2023 R&B Power presentó un recurso de *certiorari* ante este Tribunal en el que señaló los errores siguientes:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE APELACIONES AL NO DETERMINAR QUE LA JUNTA REVISORA DE ASG CARECÍA

---

[16] Íd., págs. 335-339.
[17] Íd., págs. 347-367.

DE JURISDICCIÓN PARA DESESTIMAR EL RECURSO DE REVISIÓN DE R&B [POWER] POR HABER TRANSCURRIDO EL TÉRMINO FATAL PARA QUE ESTA [LO] ADJUDICARA […] O NOTIFICARA EXTENSIÓN DE DICHO TÉRMINO.

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE APELACIONES AL NO DETERMINAR QUE LA ASG NO PUEDE IMPONER EL CARGO DE ARANCELES A ESCRITOS DE REVISIÓN MEDIANTE UNA CARTA CIRCULAR PORQUE LA LEY REQUIERE QUE SEA A TRAVÉS DE UN REGLAMENTO.

En su comparecencia —la cual solicitó que acogiéramos como su alegato y así lo concedimos—, R&B Power enuncia, al elaborar sobre su primer señalamiento de error, que la agencia administrativa concernida "no solo carecía de jurisdicción para desestimar […] [la solicitud de revisión] ya que notificó su resolución luego del término fatal y jurisdiccional que tiene para decidir, sino que también estaba impedida de imponer un cargo de aranceles a escritos de revisión mediante la Carta Circular porque la ley requiere que sea a través de un reglamento".[18] En apoyo a su planteamiento, alude tanto a los estatutos como al reglamento que rigen las operaciones de la Junta Revisora, los cuales disponen un término máximo para que esta considere una solicitud de revisión.

En cuanto a su segundo señalamiento de error, expone que, al examinar la Carta Circular en cuestión, surge que "solo va dirigida y afecta a las entidades gubernamentales, entidades exentas y municipios que soliciten los servicios de la ASG".[19] "De esta forma, no constituye una regla

---

[18] *Petición de certiorari*, pág. 1.
[19] Íd., pág. 11.

legislativa porque ni aplica al público en general ni altera los derechos ni las obligaciones de los individuos".[20] En consecuencia, R&B Power razona que "la imposición de[l] pago de aranceles dispuesto en dicha Carta Circular no le sería aplicable […]".[21]

En la alternativa, R&B Power plantea que, de considerarse que la Carta Circular es una regla legislativa, porque —en lo atinente a la imposición de aranceles para la presentación de recursos de revisión ante la Junta Revisora— afecta y obliga al público en general, "inexorablemente [este Tribunal] tiene que resolver que […] [esta] es *ultra vires* porque no se promulgó conforme a la LPAU".[22] Así, "no es suficiente que la ASG tenga facultad en ley para imponer el cobro de tarifas por los servicios que presta —lo que no está en controversia—[,] [sino] que para poder reconocerle fuerza de ley a la Carta Circular y que aplicara al público en general, la ASG tenía que cumplir con los requisitos ineludibles [del proceso de reglamentación]".[23] Por tanto, R&B Power nos solicita que revoquemos la Sentencia del

---

[20] Íd.

[21] Íd.

[22] Íd.

[23] Íd. R&B Power finaliza su argumentación de la forma siguiente:

> En vista de los fundamentos anteriores, ASG estaba impedida de exigir el pago de aranceles al público en general por la presentación de un recurso de revisión, mucho menos desestimar un recurso de revisión alegando falta de jurisdicción por la falta de pago de dicho arancel. ASG pretende implementar una regla legislativa que afecta derechos de terceros a través de la Carta Circular [Núm.] 2021-06 sin haber cumplido con los requisitos de la LPAU. De esta forma dicha carta circular es **nula de su faz.** (Negrilla suplida). Íd., pág. 12.

Tribunal de Apelaciones, que se amparó en su falta de jurisdicción sobre el asunto, y devolvamos el caso para que se atienda en los méritos.

Por su parte, la ASG argumenta en su alegato que, en cuanto al primer error que R&B Power señala, "es un principio reiterado por [este Tribunal] que una agencia tiene jurisdicción aún después del término establecido[,] siempre y cuando no hubiese transcurrido el término para revisión ante el Tribunal de Apelaciones ni se hubiese presentado un recurso ante dicho foro".[24] A tal efecto, cimienta su postura en lo que se resolvió en Flores Concepción v. Taíno Motors, infra.

En lo que respecta al segundo error que se consignó en la petición de certiorari ante nos, la ASG asevera que R&B Power debió impugnar de su faz la Carta Circular al amparo de la Sección 2.7 de la LPAU, supra, a los 30 días de esta haberse publicado,[25] por medio de un recurso de revisión judicial ante el Tribunal de Apelaciones. No obstante, añade que, como el referido término venció, R&B Power perdió la oportunidad para ello.

En la alternativa, apuntala que, si R&B Power hubiese deseado impugnar en su aplicación la Carta Circular, pudo haberlo hecho ante la ASG o recurrir al Tribunal de Primera

---

[24] *Alegato de la Administración de Servicios Generales*, págs. 5-6.
[25] Según la ASG, la Carta Circular se promulgó el 16 de marzo de 2021. Íd., pág. 8. Véase también: *Carta Circular ASG Núm. 2021-06*, Apéndice de la *Petición de certiorari*, págs. 291-295.

Instancia, pero no lo hizo, toda vez que reprodujo este argumento por primera vez ante el Tribunal de Apelaciones.

Asimismo, la ASG reitera el argumento jurisdiccional en el que se basó el foro apelativo intermedio para resolver. Expone que la Junta Revisora desestimó por falta de jurisdicción la solicitud de revisión de R&B Power por no haberse perfeccionado y que, dado esto, "no existe una determinación que pueda ser revisada de conformidad con la normativa aplicable […]".[26] Según la ASG, esto priva de jurisdicción a este Tribunal, habida cuenta de que el recurso que serviría de embocadura a la revisión judicial se instó de manera defectuosa ante el impago de los aranceles.

Contando con la comparecencia de las partes, resolvemos.

## II

### A. La jurisdicción

Como es conocido, la jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias que tiene ante sí. *Pueblo v. Torres Medina*, 211 DPR 950 (2023); *Cobra Acquisitions, LLC v. Mun. de Yabucoa*, 210 DPR 384, 394 (2022); *Pueblo v. Rivera Ortiz*, 209 DPR 402, 414 (2022). "Para adjudicar un caso, el tribunal debe tener tanto jurisdicción sobre la materia como sobre las partes litigiosas". (Citas omitidas). *Cobra Acquisitions, LLC v. Mun. de Yabucoa*, *supra*, pág. 394. Por

---

[26] *Alegato de la Administración de Servicios Generales*, págs. 5-6.

tanto, "el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional". <u>Torres Alvarado v. Maderas Atiles</u>, 202 DPR 495, 500 (2019).

En ese sentido, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, por lo que los asuntos concernientes a la jurisdicción son privilegiados y deben ser atendidos de forma preferente. <u>Ruiz Camilo v. Trafon Group, Inc.</u>, 200 DPR 254, 268 (2018). Si un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. <u>Mun. de San Sebastián v. QMC Telecom</u>, 190 DPR 652, 660 (2014).

**B. El Derecho Administrativo y la delegación de poderes a las agencias administrativas**

"Como es conocido, el Derecho Administrativo regula los trámites, los poderes y las responsabilidades de las agencias administrativas, las exigencias legales para efectuar tales acciones y los remedios que tienen disponibles las partes afectadas por la actuación de una agencia". <u>Autoridad de Carretera v. Programa de Solidaridad UTIER</u>, 210 DPR 897, 907 (2022) (citando a J. Echevarría Vargas, <u>Derecho administrativo puertorriqueño</u>, 4ta ed. rev., San Juan, Ed. Situm, 2017, pág. 17). Como muy bien sugiere esta definición, la médula de esta materia jurídica se basa en el proceder de las agencias que están adscritas al Poder Ejecutivo. La creación de estas entidades denominadas

'agencias administrativas' surgió de la necesidad de "generar un conocimiento especializado para establecer la forma y manera de atender las necesidades de una sociedad cada día más amplia y más compleja". J. Echevarría Vargas, *op. cit.*, pág. 3.

En consonancia, el entendido es que la Asamblea Legislativa prescribe una norma de carácter general y esta es complementada por la intervención de la agencia administrativa, que, con su *expertise*, detalla la legislación aprobada.[27] Íd., pág. 23. Este Tribunal ha aludido a la idoneidad de este diseño de modo que se propenda a formular política pública de manera más efectiva:

> [E]l mundo moderno se caracteriza por la gran complejidad en las relaciones sociales y económicas de las personas, conjuntamente con la progresiva supervisión gubernativa sobre la conducta individual, y ello implica que la legislatura está imposibilitada de anticipar legislativamente, en forma detallada, minuciosa o específica, la multiplicidad de situaciones que puedan surgir de esas relaciones complejas, siendo suficiente el que la ley en cuestión señale o establezca normas amplias y generales que sirvan de guía o dirección a entidades administrativas expertas, para que [e]stas, con su experiencia y conocimientos especiales, apliquen esas normas concretamente a los hechos que puedan surgir y ultimen los detalles que implementen la política general legislativa. Hilton Hotels Int'l, Inc. v. Junta de Salario Mínimo, 74 DPR 670, 692–93 (1953).

---

[27] Nuestro Derecho Administrativo se nutre, en gran medida, del desarrollo de esa materia en Estados Unidos. Véase D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Sec. 1.2, 3ra ed., Forum, 2013, pág. 11 ("El [D]erecho [A]dministrativo puertorriqueño […] está moldeado a imagen y semejanza del norteamericano".). En cuanto al esquema que se deriva de aquí, véanse diversos pronunciamientos que la Corte Suprema de Estados Unidos ha realizado: United States v. Mead Corp., 533 U.S. 218, 226-227 (2001)("Congress delegate[s] authority to the agency generally to make rules carrying the force of law."); Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."); Morton v. Ruiz, 415 U.S. 199, 231 (1974) ("The power of an administrative agency to administer a congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.").

A tono con esto, es la Asamblea Legislativa el Poder Constitucional llamado a darle vitalidad a este andamiaje. En ese sentido, la Sección 16 del Artículo III de la Constitución de Puerto Rico concede a la Asamblea Legislativa la facultad de crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones. Art. III, Sec. 16, Const. ELA, LPRA, Tomo I. De esta forma, tradicionalmente, la Asamblea Legislativa ha delegado a las agencias administrativas adscritas al Poder Ejecutivo una serie de facultades, ya sea a través de la ley orgánica de la agencia o a través de leyes especiales. Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado de Puerto Rico, 211 DPR 521 (2023). Véase, también, Sánchez v. Depto. Vivienda, 184 DPR 95, 120-123 (2011).

"Dentro de ese marco de delegación, las agencias administrativas gozan de dos poderes esenciales: el poder de reglamentar al ejercer funciones cuasi-legislativas y el poder de adjudicar controversias al ejercer funciones cuasi-judiciales dentro de la pericia de la agencia". Caribe Comms., Inc. v. PRTC, 157 DPR 203, 211 (2002). Véase D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Sec. 2.1, 3ra ed., Forum, 2013, págs. 35-36.

"En este contexto, la Asamblea Legislativa tiene un rol neurálgico, pues tiene la labor ingente de delinear los contornos del ámbito de acción de las agencias

administrativas, tanto en la delegación de poder de reglamentar como de adjudicar". Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado de Puerto Rico, *supra*. A tal efecto, les corresponde a los organismos administrativos adherirse estrictamente a los poderes que les han sido delegados. Íd. Por tanto, cuando se delega una función específica a una agencia, esta no puede excederse de los límites establecidos expresa o implícitamente en la ley o por clara implicación de ésta.

Igualmente, los tribunales no podemos expandir el ámbito de acción que estableció el legislador. Yiyi Motors, Inc. v. ELA, 177 DPR 230, 247 (2009). Las actuaciones administrativas deben ajustarse al poder delegado y en ausencia de un mandato legislativo expreso o implícito, aquella actuación administrativa que no obedezca el poder conferido sería una actuación *ultra vires* de la agencia y, por ende, nula. Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado de Puerto Rico, *supra*. Véase, también, Raimundi v. Productora, 162 DPR 215, 228 (2004).

**C. Procedimiento de reglamentación**

En lo que atañe al poder de reglamentación conferido a las agencias administrativas, según discute el tratadista Demetrio Fernández Quiñones, ello se refiere a que la Asamblea Legislativa les encomienda a estas la aprobación de reglas y reglamentos. D. Fernández Quiñones, *op. cit.*, pág.

121. Véase: <u>Sierra Club v. Junta De Planificación</u>, 203 DPR 596, 605 (2019).

De este modo, la acción que estas llevan a cabo es de carácter legislativo. "El procedimiento es un medio para formular política pública. La finalidad primordial de la aprobación de reglas y reglamentos es establecer normas generales que resuelvan una multiplicidad de casos". D. Fernández Quiñones, *op. cit.*, pág. 121.

Pertinente a lo que nos corresponde resolver en este caso, es importante destacar que, como parte de esta encomienda, los entes administrativos pueden formular *reglas no legislativas* y *reglas legislativas*. <u>Sierra Club v. Junta De Planificación</u>, *supra*, pág. 605. Dependiendo del tipo de regla es el procedimiento que ha de seguirse para su aprobación, derogación o enmienda. <u>Mun. de Toa Baja v. DRNA</u>, 185 DPR 684, 696 (2012).

La Sec. 1.3(m) de la LPAU, *supra*, define una *regla* o *reglamento* como:

> [C]ualquier norma o conjunto de normas de una agencia que sea de aplicación general que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia que tenga fuerza de ley. El término incluye la enmienda, revocación o suspensión de una regla existente. Quedan excluidos de esta definición:
>
> (1) Reglas relacionadas con la administración interna de la agencia o comunicaciones internas o entre agencias que no afectan los derechos o los procedimientos o prácticas disponibles para el público en general.
>
> (2) Documentos guía según definidos en esta Ley.[28]

---

[28] La LPAU define, en su Sec. 1.3(C), el *documento guía*:

> **Documento Guía** — Significa un documento físico o electrónico de aplicabilidad general desarrollado por una agencia, **que carece de fuerza de ley**[,] pero expresa la interpretación

(3) Órdenes de precios del Departamento de Asuntos del Consumidor y otros decretos u órdenes similares que se emitan o puedan emitir en el futuro por otras agencias, y que meramente realizan una determinación de uno o varios parámetros de reglamentación con base a un reglamento previamente aprobado y que contiene las normas para su expedición.

(4) Formas y sus instrucciones, siempre que no constituyan documentos guía. 3 LPRA sec. 9603.

Estas excepciones al concepto de "regla o reglamento" pueden clasificarse en tres grupos: (1) reglas procesales; (2) declaraciones interpretativas; y (3) declaraciones de política general. H. Meléndez Juarbe, Derecho Administrativo, 73 REV. JUR. UPR 509, 510 (2004). "En términos […] generales se trata de **cartas circulares**, cartas normativas, directrices, memorandos y demás documentos menos formales que emiten las agencias para darle uniformidad a sus procedimientos internos, pautar su discreción o interpretar las leyes que administran". (Negrilla suplida). Íd., págs. 510-511. Véase, también, Mun. de Toa Baja v. DRNA, supra, pág. 696; Tosado v. AEE, 165 D.P.R. 377, 390-392 (2005). Se consideran reglas no legislativas "debido a que no tienen la fuerza de ley que se le atribuye a los reglamentos (reglas legislativas) propiamente aprobados mediante el procedimiento cuasi-legislativo de la LPAU". H. Meléndez Juarbe, op. cit., pág. 11.

---

de la agencia sobre alguna legislación, la política pública de la agencia o que describe cómo y cuándo la agencia ejercerá sus funciones discrecionales. Incluye interpretaciones oficiales, según definidas en esta Ley. Este término no incluye documentos que son reglamentos o reglas según definidas en esta Ley. (Negrilla suplida). 3 LPRA sec. 9603.

Como mencionamos, **el elemento común de estas consiste en que las reglas no legislativas constituyen pronunciamientos administrativos que no alteran los derechos ni las obligaciones de los individuos**. Sierra Club v. Junta de Planificación, *supra*, pág. 605. La LPAU dispensa del procedimiento formal de la reglamentación en esos casos.

En cambio, las denominadas reglas legislativas crean o afectan derechos, imponen obligaciones y establecen un patrón de conducta que tiene fuerza de ley. Asociación Maestros v. Comisión, 159 DPR 81, 93 (2003). "De esta forma, cualquier regla que tenga un efecto obligatorio significativo en los derechos sustantivos de un individuo constituye una regla legislativa". Mun. de Toa Baja v. DRNA, *supra*, pág. 697. Por ello, se ha expresado lo siguiente:

> Debe señalarse que el principio cardinal que regula las consecuencias legales de la reglamentación es que tiene "fuerza y efecto de ley". Equivale ello a decir que tiene la misma fuerza que un estatuto y obliga también a las agencias que no tienen discreción para repudiarla. Su alcance prescribe patrones de conducta a los cuales se tienen que conformar los afectados y cubiertos por ella. Puede el infractor de esa regulación estar sujeto de consecuencias penales. En términos prácticos un ciudadano puede enfrentarse a tantas dificultades por violar una regla sustantiva o legislativa de una agencia como por violar un estatuto aprobado por la Asamblea Legislativa. D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, 2001, págs. 124-125.

Lo anterior pone de relieve que las reglas legislativas proveen a las partes afectadas una notificación previa sobre qué conducta es permisible e impermisible. Debido a la importancia que estas revisten, y el efecto que pueden acarrear para el público en general, su promulgación

requiere el cumplimiento del procedimiento de reglamentación establecido por la LPAU. Mun. de Toa Baja v. DRNA, *supra*, págs. 697-698.

Este procedimiento de reglamentación para promulgar reglas legislativas consiste en: (1) notificar al público la reglamentación que ha de aprobarse; (2) proveer oportunidad para la participación ciudadana, incluyendo vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente, y (4) publicar la reglamentación aprobada. 3 LPRA secs. 9611-9618.

"Todos [e]stos constituyen requisitos imprescindibles y de ineludible cumplimiento". Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado de Puerto Rico, *supra* (citando a Mun. de Toa Baja v. DRNA, *supra*, pág. 695). Además, "es indispensable para poder reconocerle fuerza de ley a la regla promulgada, ya que ello forma parte de las garantías procesales que permean todo el estatuto". Sierra Club v. Junta de Planificación, *supra*, pág. 606. Véase, también, Centro Unido Detallistas v. Com. Serv. Púb., 174 DPR 174, 183 (2008). "Si la regla o reglamento no se conforma y ajusta a lo establecido [en la LPAU], carecerá de fuerza de ley y estará sujeto a que se cuestione judicialmente. La agencia está impedida de sustituir el procedimiento de la ley so pena de que se vicie de nulidad la reglamentación adoptada". D. Fernández Quiñones, *op. cit.*, pág. 138. **Por tanto, será nulo todo**

**reglamento que se adopte en violación a las disposiciones de la LPAU.**

Es meritorio indicar que la mera clasificación de un reglamento como legislativo o interno no es determinante. Báez Díaz v. ELA, 179 DPR 605, 622 (2010). "Para determinar si una regla o un reglamento es legislativo o interno se utiliza el examen del 'impacto sustancial' (*substancial impact test*). Si la reglamentación modifica derechos sustantivos o crea obligaciones, estamos ante un reglamento legislativo". Íd.

D. *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*

La Ley Núm. 73-2019, mejor conocida como la *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, 3 LPRA sec. 9831 *et seq.* (Ley Núm. 73-2019), es el estatuto habilitador de la ASG. Esta "es la entidad gubernamental responsable de implementar la política pública relativa a la adquisición de bienes y servicios no profesionales del Gobierno de Puerto Rico". Exposición de Motivos de la Ley Núm. 73-2019 (2019 [Parte 2] Leyes de Puerto Rico 1248). Mediante esta legislación se pretendía "adoptar un nuevo modelo para la compra de bienes, obras y servicios por parte del gobierno, enmarcado dentro de los principios de transparencia, uniformidad y sana competencia". Íd., pág. 1251. De este modo, se consagró "[la] política pública del Gobierno de Puerto Rico [sobre] la centralización de los

procesos de compras gubernamentales de bienes, obras y servicios, en aras de lograr mayores ahorros fiscales en beneficio del Pueblo de Puerto Rico". Íd. Véase, también, PVH Motor, LLC v. Junta de Subastas, 209 DPR 122, 132 (2022).

Es menester mencionar que, a base de la estructura que se delineó, esta agencia administrativa estaría encabezada por un Administrador o Administradora, quien a su vez sería el o la Principal Oficial de Compras del Gobierno de Puerto Rico. 3 LPRA sec. 9832f. Entre las facultades y deberes que la Ley Núm. 73-2019 le confirió a este(a) funcionario(a) se encuentran:

. . . . . . . .

> b) establecer las normas y controles necesarios para el uso y conservación de la propiedad pública bajo su custodia, conforme a las disposiciones de ley o reglamentos aplicables.

. . . . . . . .

> k) fijar y cobrar tarifas, derechos y otros cargos por servicios de licitación y administración de contratos, entre otros servicios prestados a entidades gubernamentales, entidades exentas y municipios que soliciten los servicios de la Administración;

> l) imponer el cobro de una tarifa justa y razonable, por los servicios que se brinden, incluyendo cargos por servicios de administración de contratos, entre otros, a personas privadas, naturales o jurídicas, a los fines de disponer de recursos económicos que serán dirigidos exclusivamente a sufragar los costos de implementación de procesos y/o programas tecnológicos avanzados para llevar a cabo las operaciones y funciones de la Administración.

. . . . . . . .

Íd., sec. 9832f.

Al mismo tiempo, la Ley Núm. 73-2019 creó una Junta de Subastas y una Junta Revisora de Subastas. 3 LPRA secs. 9836 & 9837. Mientras la primera "estará facultada para evaluar y adjudicar, mediante un procedimiento uniforme, las

subastas del Gobierno de Puerto Rico", la segunda "estará facultada para revisar cualquier impugnación de las determinaciones o adjudicaciones hechas por la Administración Auxiliar del Área de Adquisiciones, por la Junta de Subastas de la Administración de Servicios Generales del Gobierno de Puerto Rico o por las Juntas de Subastas de las Entidades Exentas". 3 LPRA secs. 9836 & 9837.

Debido a su relevancia, es necesario reseñar que el Art. 62 de la Ley Núm. 73-2019, *supra*, dispone:

> La Junta Revisora fijará, **mediante *reglamento***, los cargos, derechos o aranceles a ser satisfechos por: (a) la presentación de ***recursos***, según aplique; (b) las copias de cualquier documento de carácter público que se le requieran; y (c) cualquier otro trámite o servicio que preste a solicitud del público en cumplimiento con las disposiciones de esta Ley. (Énfasis y negrillas suplidos). 3 LPRA sec. 9837g.

## E. Revisión ante la Junta Revisora de Subastas de la ASG

Por su parte, la Ley Núm. 73-2019, *supra*, instrumenta un mecanismo de revisión de decisiones de la ASG. En particular, el Art. 64 establece: "La parte adversamente afectada por una decisión de la Administración, de la Junta de Subastas y/o de cualquier Junta de Subastas de Entidad Exenta podrá, dentro del término de veinte (20) días […], presentar una solicitud de revisión ante la Junta Revisora de la Administración de Servicios Generales". 3 LPRA sec. 9838a.

Incluso, el Art. 66 de este estatuto también implanta unos términos de los que dispondrá la Junta Revisora para considerar la solicitud de revisión administrativa aludida:

> La Junta Revisora deberá considerar la revisión administrativa, dentro de los treinta (30) días de haberse presentado. La Junta Revisora podrá extender dicho término

una sola vez, por un término adicional de quince (15) días calendario.

.   .   .   .   .   .   .   .

Si se tomare alguna determinación en su consideración, el término para instar el recurso de revisión judicial empezará a contarse desde la fecha en que se depositó en el correo federal o correo electrónico copia de la notificación de la decisión de la Junta Revisora resolviendo la moción.

Si la Administración o la Junta Revisora dejare de tomar alguna acción con relación a la solicitud de revisión dentro del término correspondiente, según dispuesto en este capítulo, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial.

El Tribunal de Apelaciones será el foro con jurisdicción para revisar, mediante recurso de revisión judicial, las determinaciones administrativas arriba dispuestas. 3 LPRA sec. 9838c.[29]

Obsérvese que el lenguaje de esta disposición guarda cierta similitud con el que preceptúa la Sec. 3.15 de la LPAU, *supra*, la cual establece:

La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. Si la agencia acoge la moción de reconsideración pero deja de tornar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, perderá

---

[29] Esta disposición se reproduce prácticamente de manera textual en el Art. 5.5 del *Reglamento Uniforme de Compras y Subastas de Bienes, Obras y Servicios No Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico* (Reglamento), Reglamento Núm. 9230 de 18 de noviembre de 2020. En lo pertinente, uno de los contrastes es que, al final del primer párrafo del Art. 66 del estatuto, el Art. 5.5 del Reglamento le añade: "En caso de que la Junta Revisora de Subastas determine extender el término, deberá notificarlo a las partes, previo al vencimiento del término original de treinta (30) días. De no hacerlo, se entenderá que no se extendió el termino original para todos los fines legales". Íd.

jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales.

. . . . . . . .

3 LPRA sec. 9655.

En Flores Concepción v. Taíno Motors, Inc. y otros, 168 DPR 504 (2006), esta Curia tuvo la oportunidad de interpretar la referida disposición de la LPAU.[30] Esto ocurrió en el contexto de un procedimiento adjudicativo ante el Departamento de Asuntos del Consumidor (DACo). En resumen, DACo declaró con lugar una querella que se instó contra Mitsubishi Motor Sales of Caribbean, Inc. (Mitsubishi). Acto seguido y, oportunamente, Mitsubishi presentó una moción de reconsideración. A los **dieciséis (16) días de presentarse dicha moción** DACo la **acogió** y le concedió a la parte querellante un término para que replicara.

No obstante, e insatisfecho con esta determinación, Mitsubishi acudió —vía recurso de revisión administrativa— ante el Tribunal de Apelaciones. Ulteriormente, el foro apelativo intermedio desestimó el recurso por falta de jurisdicción al ser prematuro. Razonó que, si bien DACo acogió la moción de reconsideración fuera del término dispuesto para ello, todavía retenía jurisdicción sobre el asunto dado que, en el momento en que la agencia actuó sobre

---

[30] Si bien la ley vigente en aquel momento era la Ley Núm. 170 de 12 de agosto de 1988, mejor conocida como la *Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico*, el lenguaje de la Sec. 3.15 que se interpretó en el caso es el mismo que actualmente está vigente.

la moción, no había transcurrido el término para recurrir en revisión judicial ni Mitsubishi había presentado un recurso a esos efectos.

Posteriormente, Mitsubishi recurrió a este Tribunal y refrendamos el raciocinio del Tribunal de Apelaciones. Al realizar un ejercicio hermenéutico de la Sec. 3.15 de la LPAU —y tomar como base las interpretaciones realizadas sobre la figura de la moción de reconsideración en el procedimiento civil ante los tribunales—, pautamos que

> **"una agencia administrativa tiene jurisdicción para acoger una moción de reconsideración, aun después de transcurrido el término establecido para ello en la [referida] Sec. 3.15 […], siempre y cuando no haya transcurrido el término para acudir en revisión ante el Tribunal de Apelaciones y no se haya presentado un recurso ante dicho foro"**. (Negrilla suplida). <u>Flores Concepción v. Taíno Motors, Inc. y otros</u>, *supra*, pág. 522.

Con este marco jurídico en mente, procedemos a disponer de las controversias planteadas.

### III

Los dos señalamientos de error que R&B Power esbozó son, esencialmente, de carácter jurisdiccional. No obstante, atenderemos en primer término el segundo señalamiento de error, dado que concierne el perfeccionamiento del recurso de revisión ante la Junta Revisora que originó esta controversia.

### A.

### i.

En su segundo señalamiento, y según relatáramos, R&B Power asevera que no se le puede oponer el arancel dispuesto en la Carta Circular como condición para perfeccionar su

solicitud de revisión ante la Junta Revisora. Esto lo sustenta en dos argumentos: (a) que ese documento, en principio, está dirigido a entidades gubernamentales y no al público en general, por lo que no constituye una regla legislativa que pueda afectar derechos de terceros, y (b) que, en la alternativa, de considerarse una regla legislativa, debe determinarse que es *ultra vires*, ya que no atravesó por el procedimiento de reglamentación que preceptúa la LPAU.

A su vez y, en contraposición, la ASG plantea en cuanto a este extremo que, para impugnar la Carta Circular, R&B Power debió cuestionarla de su faz ante el Tribunal de Apelaciones a los treinta (30) días de esta haberse publicado. Ahora bien, como R&B Power no lo hizo dentro de ese término, perdió la oportunidad para ello. En la alternativa, argumenta que R&B Power debió recurrir al Tribunal de Primera Instancia a impugnar en su aplicación la Carta Circular.

Este argumento de la ASG, además de desatender los señalamientos sustantivos sobre la validez de la Carta Circular en cuestión, ignora nuestro pronunciamiento en Fuentes Bonilla v. ELA, 200 DPR 364 (2018). Allí aclaramos que, aunque no se pueda revisar la corrección de una norma administrativa al amparo de la Sección 2.7 de la LPAU,[31] —y

_____

[31] La Sec. 2.7 de la LPAU, en lo pertinente, expresa:

que, como consecuencia, se deba recurrir al foro primario a esos efectos—, ello no significa que no se pueda procurar tal revisión por medio de otra disposición. En ese precedente validamos que, por medio del procedimiento de revisión judicial de determinaciones administrativas finales que instituye la Sec. 4.2 de la LPAU,[32] *supra*, se pueda realizar

-------

(a) Una regla o reglamento aprobado después de la fecha de efectividad de esta Ley será nulo si no cumpliera sustancialmente con las disposiciones de esta Ley.

(b) Cualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de esta Ley deberá iniciarse en el Tribunal de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. La competencia sobre la acción corresponderá a la región judicial donde esté ubicado el domicilio del recurrente. 3 LPRA sec. 9617.

Esta sección permite la "impugnación de su faz" de un reglamento administrativo por incumplir con las exigencias de la LPAU en torno al procedimiento de reglamentación. Sierra Club v. Junta de Planificación, 203 DPR 596, 606 (2019). A diferencia de impugnar un reglamento por razón de su aplicación, al impugnarlo de su faz no se requiere acreditar legitimación activa. Íd., pág. 607. Cualquier persona puede impugnar de su faz la validez de una regla o reglamento aprobado por una agencia administrativa en incumplimiento de las disposiciones de la LPAU. Íd., págs. 607-608.

Si asumimos, para propósitos argumentativos, que la Carta Circular es un reglamento, y su vigencia fue a partir de 16 de marzo de 2021 —fecha en que se emitió—, ciertamente el término para que R&B Power la impugnara de su faz transcurrió.

Independientemente de lo anterior, R&B Power no hubiese tenido la oportunidad de ejercer su acción de impugnación de su faz toda vez que la ASG no le dio un tratamiento de reglamento a la Carta Circular y, por tanto, no le dio la publicidad necesaria ni cumplió con los demás requisitos que dispone la LPAU.

[32] La Sec. 4.2 de la LPAU, en lo pertinente, dispone:

Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La

una impugnación reglamentaria.[33]

Ese es, precisamente, el escenario en el que nos encontramos en este caso. R&B Power se valió de la Sec. 4.2 de la LPAU,[34] *supra*, y recurrió al Tribunal de Apelaciones

---

parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo. Disponiéndose, que si la fecha de archivo en autos de copia de la notificación de la orden o resolución final de la agencia o del organismo administrativo apelativo correspondiente es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.

**En los casos de impugnación de subasta, la parte adversamente afectada por una orden o resolución final de la agencia, de la ]unta Revisora de Subastas de la Administración de Servicios Generales, o de la entidad apelativa de subastas, según sea el caso, podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones dentro de un término de veinte (20) días, contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia, la referida Junta Revisora de Subastas de la Administración de Servicios Generales o la entidad apelativa, o dentro del término aplicable de veinte (20) días calendario de haber transcurrido el plazo dispuesto por la Sección 3.19 de esta Ley.** (Negrilla suplida). 3 LPRA sec. 9672.

[33] En específico, expusimos:

La Sec. 2.7 de la LPAU […] no limita la competencia del Tribunal de Apelaciones para revisar una regla o un reglamento que se aplicó por una agencia en un proceso adjudicativo. Tampoco excluye la revisión de una regla o un reglamento al amparo de otras disposiciones. Su letra se ciñe a crear la acción de nulidad de un reglamento por el incumplimiento con la LPAU, sin que se tenga que probar que la reglamentación haya sido aplicada a quien la impugne. **De igual manera, la Sec. 4.2 no limita la competencia del tribunal apelativo intermedio sobre ese asunto. En ese sentido, si bien la Sec. 2.7 de la LPAU establece un término de treinta días para impugnar una regla o un reglamento de su faz, por incumplir con las disposiciones de la propia ley, esto no impide que posteriormente el foro apelativo revise la legalidad de un reglamento cuando se recurre en revisión de la determinación de una agencia bajo la Sec. 4.2 de la LPAU. En este último caso el escrutinio se realiza, incidentalmente, como parte de la revisión de la decisión final de la agencia.** (Negrilla suplida). Fuentes Bonilla v. ELA, 200 DPR 364, 390-391 (2018).

[34] Adviértase que la revisión de determinaciones finales de la Junta Revisora de Subastas está gobernada por el Art. 68 de la Ley Núm. 73-2019, que a su vez refiere a la LPAU ("La parte adversamente afectada por la determinación de la Junta Revisora podrá presentar un recurso de revisión ante el Tribunal de Apelaciones conforme a lo establecido en

para procurar la revisión de la determinación final de la Junta Revisora y, al mismo tiempo, exponer los planteamientos dirigidos a impugnar la Carta Circular. **De este modo, R&B Power viabilizó su reclamo conforme a derecho, por lo que nos encontramos plenamente facultados de atenderlo en los méritos.**

### ii.

Procedamos a justipreciar la Carta Circular en cuestión. En primer lugar, este documento está dirigido a "Secretarios de Departamentos, Jefes de Agencias, Oficinas, Comisiones, Administraciones, Organismos y demás instrumentalidades de la Rama Ejecutiva del Gobierno del Estado Libre Asociado, Directores Ejecutivos [y] alcaldes".[35] En particular, se refiere a la atención de los "Directores de Compras, Delegados Compradores, subdelegados, Compradores, Directores de Servicios Administrativos, Gerentes de Transportación, Directores de Finanzas y Pagadores".[36]

En segundo lugar, el documento fundamenta la base legal para su adopción en los incisos (b) y (k) del Artículo 11 de la Ley Núm. 73-2019, *supra*.

En tercer lugar, la Carta Circular establece como propósito para su adopción "el objetivo de actualizar las tarifas aplicables para los servicios que ofrecemos en la

---

las secs. 9601 *et seq.* de este título, conocidas como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*"). 3 LPRA sec. 9838e.
[35] Apéndice de la *Petición de certiorari*, pág. 291.
[36] Íd.

ASG. Reiteramos nuestro compromiso de brindar diversidad de servicios, de forma ágil y eficiente, que atienda las necesidades de la Rama Ejecutiva, así como de las Corporaciones Públicas, Municipios y otras Ramas de Gobierno".[37]

En cuarto y último lugar, las tarifas mencionadas se esbozan en formato de tabla, la cuales son, prácticamente en su mayoría, en concepto de los servicios que la ASG tiene disponibles para brindar a otras entidades gubernamentales. Por ejemplo, se desglosan servicios como: (a) elaboración de distintas subastas, (b) adiestramientos, (c) alquiler de equipo, (d) tasaciones, (f) venta de combustible, (g) inspecciones, entre muchos otros. **La última tarifa que se incluye en la tabla, identificada con el código 6-03, es la que se cobra en concepto de las impugnaciones que se presentan ante la Junta Revisora, la cual asciende a $125.**[38]

Al evaluar de manera integrada la Carta Circular, **queda claro que esta se adoptó a los efectos de constituir una regla no legislativa.** Esto, pues es una comunicación dirigida a otras agencias gubernamentales —y no al público en general— sobre cómo la ASG cobrará por los servicios que tiene disponibles para ofrecerles. Sin duda, prácticamente la totalidad del documento se formuló con el propósito de no oponerle su contenido a terceros, más allá de a otras agencias administrativas. **Esta Carta Circular, a todas**

---

[37] Íd., pág. 292.
[38] Íd., pág. 295.

**luces, se sitúa cabalmente dentro de la definición de** *Documento guía* **que establece la LPAU, la cual reza que estos carecerán de fuerza de ley.** En esta tesitura, es meritorio recordar que **"una carta circular es una regla no legislativa ya que no tiene la fuerza de ley que se le atribuye a los reglamentos"**. (Negrilla suplida). <u>González Segarra v. CFSE</u>, 188 DPR 252, 298 (2013). **De este modo, R&B Power no tenía** <u>**razones para adherirse al contenido de la Carta Circular, ni**</u> <u>**la expectativa de que esta le fuera aplicada, pues, en**</u> <u>**principio, el propósito no era dirigírsela a terceros**</u> <u>**licitadores.**</u>

No obstante, la **ASG, con su proceder, le atribuyó los efectos de una regla legislativa,** <u>**específicamente a la**</u> <u>**última tarifa que esboza la tabla a la que hicimos**</u> <u>**referencia**</u>**, con todo lo que ello implica según la doctrina.** Esto ocurrió cuando la Junta de Subastas, en su determinación, le apercibió a R&B Power que debía cubrir el referido costo para recurrir a la Junta Revisora; cuando la Junta Revisora basó su decisión en el impago de este y cuando la ASG ha defendido, a lo largo de este litigio, la corrección de una norma impropiamente adoptada. **A R&B Power se le exigió cumplir con una norma cuyo incumplimiento tuvo el efecto de que se** *impactaran sustancialmente* **sus derechos, pues redundó en perder la oportunidad de revisar una determinación que le fue desfavorable.** <u>**Esto ocurrió a pesar**</u> <u>**de que, como argumentamos, razonablemente desconocía que**</u> <u>**debía cumplir con esa exigencia.**</u>

Con lo anterior, queda establecido que **la tarifa que se esboza en la Carta Circular para las impugnaciones ante la Junta Revisora es una regla no legislativa,** pero que la agencia quiso dotar de fuerza de ley. De este modo, resta por determinar si se podía incorporar sin más en el referido documento sin procedimiento ulterior. **La respuesta es que no.**

**Con este proceder, la ASG no solamente incumplió el mandato expreso del Art. 62 de la Ley Núm. 73-2019, _supra_, —en cuanto a que, para fijar los derechos, cargos y aranceles a ser satisfechos para presentar recursos ante la Junta Revisora se debe adoptar un reglamento—, sino que también dio al traste con la doctrina firmemente establecida de que toda regla legislativa debe atravesar por el procedimiento de reglamentación dispuesto en la LPAU para su adopción.**

El procedimiento de reglamentación estatuido en la LPAU no es un mero formalismo. Toda vez que las reglas legislativas "tienen fuerza y efecto de ley porque son una extensión del proceso legislativo",[39] es imperativo que, previo a su adopción, la ciudadanía esté plenamente informada sobre su contenido y participe en su formulación por medio del ofrecimiento de comentarios y a través de vistas públicas, de ser aplicable esto último.

En la controversia que nos ocupa, el problema con el que nos confrontamos no es con el contenido sustantivo de la

---

[39] (Traducción suplida). 3 Admin. L. & Prac. § 10:21 (3d ed.).

norma, pues, sin duda, **la Asamblea Legislativa facultó a la ASG a imponer aranceles para la presentación de recursos ante la Junta Revisora**. La disputa surge más bien por el medio que se seleccionó para adoptarla. Esta norma es **procesalmente deficiente** al no atravesar el procedimiento de reglamentación formal que preceptúa la LPAU. **Por ello, colegimos que la ASG ha actuado de manera *ultra vires*, incluso haciendo caso omiso al mandato expreso de su ley habilitadora de la adopción de un reglamento para este fin. <u>Ante este escenario, nos vemos forzados a decretar la nulidad de la tarifa identificada con el código 6-03 de la Carta Circular Núm. 2021-06</u>**.[40]

Aprovechamos esta oportunidad para recordarles a las agencias administrativas que, independientemente de que la Asamblea Legislativa les faculte a formular reglas legislativas, estas deben adoptarse mediante el mecanismo que dispone la LPAU. Nuestro ordenamiento no tolera que este tipo de reglas se incluyan *sub silentio* en documentos guía —o en cualquier otra regla no legislativa— y que se circunvale el procedimiento formal para su adopción.

Al arribar a esta conclusión, razonamos, como corolario, que la solicitud de revisión que R&B Power instó ante la Junta Revisora se perfeccionó conforme a derecho, pues, para ello, **no tenía que satisfacer arancel alguno**. En

---

[40] Consideramos que el proceder de limitar el alcance de nuestro dictamen de nulidad es el correcto, pues, la Carta Circular no es un reglamento en sí de modo que el incumplimiento con la LPAU no acarrearía la nulidad radical del documento, solo de aquella parte pertinente que es contraria a derecho.

ese sentido, la Junta Revisora no tiene impedimento para asumir jurisdicción y considerar en sus méritos la referida solicitud.

**B.**

En lo que concierne al primer señalamiento de error, R&B Power aseveró que la Junta Revisora carecía de jurisdicción para actuar sobre la solicitud de revisión, incluso para desestimarla, dado que la Junta Revisora no extendió oportunamente el término que tenía para decidir. Según expusimos, R&B Power presentó su solicitud de revisión ante la Junta Revisora el **20 de septiembre de 2022** y, a partir de esa fecha, la Junta Revisora disponía de 30 días para considerarla. Este término venció el **20 de octubre de 2023** sin que la Junta Revisora emitiera determinación alguna o notificara la extensión del término para decidir. Luego, el **24 de octubre de 2022**, la Junta Revisora notificó una *Resolución* en la que extendió el término para resolver a quince (15) días adicionales. Así pues, el 8 de noviembre de 2022 notificó una *Resolución* en la que desestimó la solicitud de revisión. Subsiguientemente, el 9 de noviembre de 2022 R&B Power recurrió al Tribunal de Apelaciones. Con este cuadro, la ASG argumentó que aplica lo resuelto en Flores Concepción v. Taíno Motors, *supra*. **Le asiste la razón a la ASG.**

En vista del parecido evidente entre el Art. 66 de la Ley Núm.73-2019 y la Sec. 3.15 de la LPAU —y considerando que ambas disposiciones fueron concebidas para

procedimientos administrativos—, **no vemos impedimento para extrapolar nuestro razonamiento en <u>Flores Concepción v. Taíno Motors</u>, *supra*, y aplicarlo por analogía en este caso.**[41] Así lo hacemos, **por lo que pautamos que, en el contexto de los procedimientos ante la Junta Revisora, esta tiene jurisdicción para actuar sobre la revisión administrativa que se inste ante sí, aun después de transcurrido el término establecido para ello en el Art. 66 de la Ley Núm. 73-2019, *supra*, siempre y cuando no haya transcurrido el término para acudir en revisión ante el Tribunal de Apelaciones y no se haya presentado un recurso ante dicho foro.**

Aquí, si bien la Junta Revisora extendió, fuera del término original de 30 días, su término para resolver el

---

[41]    Se recurre al principio de la analogía en la hermenéutica jurídica únicamente cuando el Derecho no ha contemplado el supuesto específico que se ha de resolver, pero existe otro semejante al planteado que ha sido previsto y entre ambos existe identidad de razón. <u>Orraca López v. ELA</u>, 192 DPR 31, 45 (2014)(citando a J. Puig Brutau, <u>Compendio de Derecho Civil</u>, Barcelona, Ed. Bosch, 1987, Vol. I, pág. 105). Véase Art. 21 del Código Civil de 2020, 31 LPRA sec. 5343. En estas situaciones hemos manifestado que "la norma del caso regulado podrá aplicarse por analogía al caso que no lo está, porque la misma razón justifica la identidad de la consecuencia". <u>Orraca López v. ELA</u>, *supra*, pág. 45. Véase J.A. Cosme Morales, <u>Apuntes sobre el Título Preliminar del Código Civil de 2020</u>, Ed. En Contexto, 2023, págs. 173-178; J. Farinacci Fernós, <u>Hermenéutica puertorriqueña: cánones de interpretación jurídica</u>, Puerto Rico, Ed. InterJuris, 2019, págs. 173-175;

La Ley Núm. 73-2019 no contempla el supuesto específico de si la Junta Revisora retiene jurisdicción sobre una revisión administrativa, aun cuando cuyo término para resolverla fue extendido inoportunamente, pero no se ha recurrido al Tribunal de Apelaciones ni ha transcurrido el término para ello. Ante esto, **como en la situación jurídica que se atendió en <u>Flores Concepción v. Taíno Motors</u>, 168 DPR 504 (2006), y la que nos ocupa existe el grado de identidad que justifica recurrir a la analogía y acoger y aplicar la norma que allí se instauró, así procedemos para resolver la controversia.** Al respecto, conviene recordar que "[n]o sería justo ni lógico que dentro de un mismo ordenamiento no recibieran la misma solución ambos supuestos, a pesar de sus circunstanciales diferencias, cuando coinciden en lo esencial". <u>Orraca López v. ELA</u>, *supra*, pág. 45.

asunto ante sí, **lo determinante es que su resolución desestimatoria la emitió antes de que transcurriera el término para acudir en revisión ante el Tribunal de Apelaciones y de que se presentara un recurso ante dicho foro. Concluimos, pues, que la Junta Revisora tenía jurisdicción para actuar sobre la revisión administrativa ante sí.**

**IV**

Por los fundamentos expuestos, se revoca la Sentencia del Tribunal de Apelaciones. **Se decreta la nulidad de la tarifa identificada con el código 6-03 de la Carta Circular Núm. 2021-06** y se devuelve el caso a la Junta Revisora para que atienda en sus méritos la solicitud de revisión que R&B Power instó.

Se dictará Sentencia de conformidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

R&B Power, Inc.

    Peticionaria

        v.

Junta de Subastas de la Administración de Servicios Generales de Puerto Rico

    Recurrida

CC-2023-0200     *Certiorari*

SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2024.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la Sentencia del Tribunal de Apelaciones. Se decreta la nulidad de la tarifa identificada con el código 6-03 de la Carta Circular Núm. 2021-06 y se devuelve el caso a la Junta Revisora para que atienda en sus méritos la solicitud de revisión que R&B Power, Inc. instó.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Rivera García no intervinieron.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo